## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

---

| | | |
|---|---|---|
| IN RE YASMIN AND | ) | MDL No. 2100 |
| YAZ | ) | 3:09-md-02100- |
| (DROSPIRENONE) | ) | DRH-PMF |
| MARKETING, SALES | ) | |
| PRACTICES AND | ) | |
| PRODUCTS | | |
| LIABILITY | | |
| LITIGATION | | |

---

**This Document Relates to:**

*Ryan Bleecher, et al., v. Bayer Corp., et al.* **Case No. 3:10-cv-20382-DRH-PMF**

*Josefina Brambila, et al., v. Bayer Corp., et al.* **Case No. 3:10-cv-20248-DRH-PMF**

---

## ORDER

## I. INTRODUCTION

Both of the above captioned cases are multi-plaintiff actions originally brought in California State Court against various Bayer entities (collectively, the "Bayer Defendants") (all non-California citizens), and McKesson Corporation ("McKesson") (a citizen of California and Delaware). The gravamen of Plaintiffs' claims is that the Bayer Defendants made false representations and concealed material facts concerning the safety and efficacy of YAZ, Yasmin, and/or Ocella.

The virtually identical complaints assert product liability claims[1]

---

[1] The Court notes that what constitutes a "product liability action" varies from state to state. Under the product liability statutes in Michigan, North Carolina,

sounding in negligence, strict liability, breach of express and implied warranties, and fraud/misrepresentation as well as a claim for alleged violations of California's consumer protection laws (*Brambilla* Doc. 1-4; *Bleecher* Doc. 1, Doc. 1-1).[2] In both actions, all of the claims are directed generically against all of the Defendants.

The Plaintiffs have no connection with one another — each received medication prescribed by different doctors, dispensed by different pharmacies, at different times, and in different locations. Two of the Plaintiffs in *Brambila* (Plaintiffs Brambila and Johnson) and one of the Plaintiffs in *Bleecher* (Plaintiff Bleecher) are citizens of California (*Brambila*, 3:10-cv-20248 Doc. 1-4 ¶¶ 2, 20; *Bleecher*, 3:10-cv-20382 Doc. 1 p. 28 ¶ 2). The remaining Plaintiffs are citizens of Massachusetts, North Carolina, New York, Arizona, Tennessee, Michigan, New Hampshire, Oklahoma, Florida, South Dakota, and Georgia.

McKesson, the only non-diverse defendant, is a wholesale distributor of prescription medications that purchases pharmaceuticals for sale to retail pharmacies.[3] The only allegation with regard to McKesson is that McKesson sold

---

and Tennessee, for example, all of the claims asserted by Plaintiffs are considered "product liability actions." **Mich. Comp. Laws § 600.2945(h); N.C. Gen. Stat. § 99B-1(3); Tenn. Code Ann. § 29-28-102(6).**

[2] Certain Plaintiffs have also asserted derivative claims for wrongful death and loss of consortium (*Brambila*, 3:10-cv-20248 Doc. 1-4 Count XI; *Bleecher*, 3:10-cv-20382 Doc. 1-1 Counts XI and XII).

[3] Despite Plaintiffs' arguments to the contrary, the Court concludes that McKesson is nothing more than a distributor of the subject drugs. In their motion to remand, the *Bleecher* Plaintiffs contend that McKesson engages in risk management and marketing activities and therefore is more than a mere

the subject drugs to Plaintiffs' respective pharmacies (*Bleecher* Doc. 1 p. 34 ¶ 27 ("Upon information and belief, MCKESSON CORPORATION distributed the Yasmin ingested by the Plaintiffs."); *Brambilla* Doc. 1-4 ¶ 36 (same)).[4] Neither complaint identifies any particular act of fraud or negligence by McKesson, any particular representation by McKesson, or any other actionable conduct on the

---

distributor (*Bleecher*, 3:10-cv-20382 Doc. 17 pp. 18-21, Doc. 17-17, Doc. 17-18) The Court's fraudulent joinder analysis, however, is limited to the allegations in Plaintiffs' complaint at the time of removal. **See Poulos v. Naas Foods, Inc., 959 F.2d 69, 74 (7th Cir. 1992) (defendant seeking removal based on fraudulent joinder need not negate any possible theory that the plaintiff might allege in the future; only the plaintiff's present allegations count). See also Faucett v. Ingersoll-Rand Mining & Machinery Co., 960 F.2d 653, 655 (7th Cir. 1992)(a court may, however, engage in the limited use of affidavits and similar evidence in assessing jurisdictional facts).** The only specific allegation with regard to McKesson, is that McKesson distributed the drugs ingested by the Plaintiffs (*Bleecher* Doc. 1 p. 34 ¶ 27; *Brambilla* Doc. 1-4 ¶ 36). Further, the allegations in the *Bleecher* Plaintiffs' remand motion are not probative of McKesson's distributor status with regard to the subject drugs. The *Bleecher* Plaintiffs only allege that McKesson provided risk management services to its "customers" or with regard to "prescription drugs." As the Court has explained in prior decisions, such generic allegations do not sufficiently allege any activity on the part of McKesson with regard to Yaz, Yasmin, or Ocella. **See e.g., In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig., 2010 WL 3937414, \*13 (S.D. Ill. Oct. 4, 2010) (Herndon, CJ.) (allegation in plaintiffs' complaint that McKesson is a major "pharmaceutical distributor" insufficient).** Nor do these generic allegations serve to refute McKesson's affidavit expressly attesting to the fact that McKesson "had no involvement in clinically researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling and/or warranting Yaz, Yasmin, or Ocella" (*Brambila,* 3:10-cv-20248 Doc. 24-1 ¶ 4; *Bleecher*, 3:10-cv-20382 Doc. 29-1 ¶ 4). **See Faucett v. Ingersoll-Rand Mining & Machinery Co., 960 F.2d 653, 655 (7th Cir. 1992) (indicating that a limited use of uncontested affidavit of nondiverse defendant sufficient basis for finding of fraudulent joinder)**

[4] In contrast, Plaintiffs expressly allege that the Bayer Defendants were involved in the research, development, manufacturing and marketing of the subject drugs (*see e.g., Brambila,* 3:10-cv-20248 Doc. 1-4 pp. 17-18 ¶ 27; *Bleecher*, 3:10-cv-20382 Doc. 1 p. 32 ¶ 21).

part of McKesson that could be the basis for a claim of negligence, fraud, or breach of express warranty.

The Bayer Defendants removed both actions to federal district court in California on the basis of diversity jurisdiction, arguing that some of the non-California Plaintiffs fraudulently joined McKesson and that the claims of the Plaintiffs were misjoined. Plaintiffs moved for remand to state court, arguing that there is no misjoinder, the claims against McKesson are viable, and that complete diversity does not exist. Both actions were subsequently transferred to this Multidistrict Litigation ("MDL") with Plaintiffs' remand motions pending.[5]

## II. ANALYSIS

### A. Overview

There is no dispute that ten of the *Brambilla* Plaintiffs (including two California citizens) and six of the *Bleecher* Plaintiffs (including one California citizen) have asserted viable claims against McKesson. The parties disagree with regard to (1) whether four of the *Brambilla* Plaintiffs and three of the *Bleecher* Plaintiffs (collectively, the "Disputed Plaintiffs") fraudulently joined McKesson, as well as the substantive law governing the Disputed Plaintiffs' claims and (2)

---

[5] The Bayer Defendants filed an opposition to remand in *Bleecher* in California district court (*Bleecher*, 3:10-cv-20382 Doc. 20). The *Brambila* action was transferred to this MDL prior to the filing of an opposition. The Bayer Defendants filed identical oppositions to remand in *Bleecher* and *Brambilla* in this MDL on September 24, 2010 addressing the conflict of laws issue and applying governing law from the Seventh Circuit (*Brambila,* 3:10-cv-20248 Doc. 24; *Bleecher*, 3:10-cv-20382 Doc. 29).

whether the Court may sever and remand only a portion of the Plaintiffs' claims based on the doctrine of procedural misjoinder.

As is explained more fully below, even assuming all of the Disputed Plaintiffs fraudulently joined McKesson, complete diversity does not exist because the California Plaintiffs have asserted viable claims against McKesson. Accordingly, traditional notions of fraudulent joinder are not a basis for removal jurisdiction in the above captioned cases. The above captioned cases are only removable if the Court recognizes the procedural misjoinder doctrine as a basis for exercising removal jurisdiction. Application of this doctrine would allow the Court to "create" diversity by severing misjoined claims prior to assessing whether complete diversity exists.

For these reasons, the Court need not resolve the parties' disagreement with regard to the Disputed Plaintiffs' alleged fraudulent joinder of McKesson and the related choice of law issue. Instead, the Court need only determine whether the procedural misjoinder doctrine should be applied. In summary, although the Court has significant concerns about the structuring of the above captioned cases, the Court concludes that adopting the procedural misjoinder doctrine would be an improper judicial expansion of federal jurisdiction. Accordingly, the Court finds that the above captioned cases lack complete diversity and must be remanded to state court.

**B.      Fraudulent Joinder**

### 1.    California Plaintiffs

There is no doubt that the claims of the three California Plaintiffs (two Plaintiffs in *Brambila* and one Plaintiff in *Bleecher*) are governed by the substantive law of California.  In previous remand orders in this MDL, the Court has concluded that, under California law, a non-manufacturing defendant such as McKesson could be held strictly liable based solely on its role as a seller in the chain of distribution of an allegedly defective product.  ***See e.g., In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 2010 WL 1963202, \*3-4 (S.D. Ill. May 14, 2010) (Herndon, D.).  *See also Bostick v. Flex Equip. Co., Inc.,* 54 Cal. Rptr. 3d 28, 34 (Cal. App. 2007) (California "imposes strict liability in tort on all of the participants in the chain of distribution of a defective product.").**

In the instant cases (unlike previous similarly situated actions in this MDL), the Plaintiffs have alleged that McKesson supplied the pills they ingested.  Accordingly, under California law, the California Plaintiffs have pled at least one viable cause of action against McKesson; namely, strict product liability based solely on McKesson's role in the chain of distribution.  Although the Bayer Defendants disagree with the Court's interpretation of California law with regard to pharmaceutical distributors, they acknowledge that, in light of this Court's prior decisions, the California Plaintiffs have not fraudulently joined McKesson.

### 2.    Non-California Plaintiffs

### a. Citizens of Massachusetts, New York, Arizona, New Hampshire, Oklahoma, Florida

The Bayer Defendants concede that the Massachusetts (one *Bleecher* Plaintiff), New York (two *Bleecher* Plaintiffs), Arizona (two *Brambilla* Plaintiffs and one *Bleecher* Plaintiff), New Hampshire (two *Brambilla* Plaintiffs), Oklahoma (two *Brambilla* Plaintiffs), and Florida (two *Brambilla* Plaintiffs and one *Bleecher* Plaintiff) Plaintiffs have stated one or more viable claims against McKesson.[6] As there is no dispute with regard to the viability of the claims brought by these Plaintiffs, the Court presumes that these Plaintiffs have not fraudulently joined McKesson.

### b. The Disputed Plaintiffs – Citizens of Georgia, Michigan, Tennessee, South Dakota, and North Carolina

### i. The parties' arguments

As to the Georgia (one *Brambilla* Plaintiff and one *Bleecher* Plaintiff), Michigan (one *Brambilla* Plaintiff), Tennessee (one *Brambilla* Plaintiff), South Dakota (one *Brambilla* Plaintiff), and North Carolina (two *Bleecher* Plaintiffs)

---

[6] The Bayer Defendants contend that the substantive laws of the non-California Plaintiffs' respective states of citizenship govern. The Bayer Defendants acknowledge that the New York, Arizona, New Hampshire, Oklahoma, Florida, and Massachusetts Plaintiffs have not fraudulently joined McKesson. Presumably, the Bayer Defendants have concluded that these states would recognize one or more of the causes of action directed against McKesson. The Plaintiffs position is that California law governs all of the Plaintiffs' claims and that the claims asserted against McKesson are viable under California law. Regardless of the path taken to get there, the bottom line is, the viability of these Plaintiffs' claims is not in dispute.

Plaintiffs, the Bayer Defendants contend that the substantive laws of the Plaintiffs' respective states of citizenship govern and, under the substantive laws of these states, the claims against McKesson have no reasonable chance of success.

The *Brambilla* Plaintiffs presume, without explanation, that California law governs all of Plaintiffs' claims and that under California law Plaintiffs claims are viable (*Brambila,* 3:10-cv-20248 Doc. 18). The *Bleecher* Plaintiffs assert that California choice of law principles require application of California law and that under California law Plaintiffs' claims are viable (*Bleecher*, 3:10-cv-20382 Doc. Doc. 17). In the alternative, the *Bleecher* Plaintiffs argue that even assuming the substantive laws of the Disputed States govern the Disputed Plaintiffs' claims, the claims are viable because McKesson is more than a mere distributor of pharmaceuticals (*Bleecher*, 3:10-cv-20382 Doc. 17).

The Bayer Defendants summarily contend, without engaging in a choice of law analysis, that the substantive laws of Plaintiffs' respective states of citizenship govern (*Brambila,* 3:10-cv-20248 Doc. 24 p. 4; *Bleecher*, 3:10-cv-20382 Doc. 29) ("As a general rule the law of the state where the product allegedly injured the plaintiff governs the plaintiff's claims."); *see also, e.g., id.* (claiming that the claims of Plaintiffs Tiffany Faulk and Rhonda L. Levitt are governed by

Georgia law because Faulk and Levitt are "from Georgia and were allegedly injured in Georgia").[7]

### ii.     Analysis - Fraudulent Joinder and the Claims of the Disputed Plaintiffs

The doctrine of fraudulent joinder is an exception to the complete diversity rule that protects an out-of-state defendant's access to federal court despite the presence of a non-diverse defendant. *See Poulos v. Naas Foods, Inc.,* **959 F.2d 69, 73 (7th Cir. 1992).** As it has been traditionally understood, fraudulent joinder is the filing of a claim against a non-diverse defendant that "simply has no chance of success." *Id.* In the Seventh Circuit, fraudulent joinder occurs in one of two circumstances:  (1) when there has been outright fraud in a plaintiff's pleading of jurisdictional facts against a non-diverse defendant or (2) when there is no reasonable possibility that a plaintiff can state a cause of action against a diversity-defeating defendant in state court. *See Gottlieb v. Westin Hotel Co.,* **990 F.2d 323, 327 (7th Cir.1993)**. If fraudulent joinder is established, the court may disregard the nondiverse party in its jurisdictional analysis. *See Schwartz v. State Farm Mut. Auto Ins. Co.* **174 F.3d 875, 878 (7th Cir. 1999).** The court then considers the citizenship of the remaining

---

[7] The Bayer Defendants, also state that the "same result holds" under California choice-of-law rules (*Brambila, 3:10-cv-20248 Doc.* 24 p. 4 n. 3; *Bleecher*, 3:10-cv-20382 Doc. 29 p. 4 n. 3).  This may be the case; however, an appropriate choice of law analysis is required to reach this conclusion.

parties and decides whether to keep the case or remand for lack of complete diversity.

In the above captioned cases, the Bayer Defendants contend that the substantive laws of the Disputed Plaintiffs' respective states of citizenship govern and that, under the substantive laws of these states, the claims against McKesson are not viable. As discussed above, however, the Bayer Defendants acknowledge that the remaining Plaintiffs, including the California Plaintiffs, have not fraudulently joined McKesson.

Because the California Plaintiffs have stated viable claims against McKesson, a finding of fraudulent joinder as to the Disputed Plaintiffs does not allow the Court to *entirely* disregard McKesson's citizenship. That is, even if all of the Disputed Plaintiffs in *Bleecher* have fraudulently joined McKesson, the case as a whole is not removable because it still involves one California Plaintiff asserting a viable claim against McKesson, a California citizen. Therefore, the case does not pass the complete diversity test. The same is true with regard to the *Brambilla* action which involves two California Plaintiffs.

Accordingly, the Court need not resolve the choice of law issue[8] or the fraudulent joinder issue[9] at this time. Instead, for the purpose of brevity, the

---

[8]  If the Court were to resolve the choice of law issue at this time, it would conclude that the substantive laws of the Disputed Plaintiffs' respective states of citizenship govern. The Court's decision, however, would be based on the fact that the Disputed Plaintiffs "reside there and were injured there." Instead, the Court's decision would be based on California's governmental interest approach

Court assumes, without deciding, that the Disputed Plaintiffs have fraudulently

joined McKesson.  Nonetheless, each case lacks complete diversity and is not

removable unless the Court finds that the nondiverse parties have been misjoined

and that such misjoinder is an appropriate basis for asserting removal

jurisdiction.  Accordingly, the Court moves directly to an assessment of the

alternative basis for removal raised by the Bayer Defendants – procedural

misjoinder.[10]

---

which requires the Court to consider the relevant contacts in light of the "interests of the litigants and the involved states." **Robert McMullan & Son, Inc. v. United States Fid. & Guar. Co. 103 Cal. App. 3d 198, 204 (Cal. Ct. App. 1980)**. Applying this choice of law analysis, it is clear that this is not a case of true conflict.  California has no interest in applying its law to the claims of the non-California Plaintiffs.  On the other hand, the laws of the Disputed States would be significantly impaired if California law were applied to any of the Disputed Plaintiffs' claims.  For a detailed analysis of California's choice of law principles and application of those principles in cases involving similar facts, the Court directs the parties to the following authority: **McCann v. Foster Wheeler LLC, 225 P.3d 516 (Cal. 2010); Chang v. Baxter HealthCare Corp., 599 F.3d 728, 734 (7th Cir. 2010)**.

[9] In assessing the parties' briefs on the viability of the Disputed Plaintiffs' claims against McKesson, the Court notes that the parties often fail to adequately distinguish and at times completely disregard the fact that Plaintiffs have asserted several different theories of recovery.  Although there can be overlap, the theories of recovery asserted by the Plaintiffs generally involve different requisite elements.  For instance, the fact that a product liability statute precludes *strict* liability claims does not, in and of itself, establish that a product liability claim sounding in *negligence* is precluded as well.  Similarly, a product liability statute prohibiting strict liability claims does not necessarily prohibit contract based warranty claims.   In future briefings, it is imperative that the parties address each unique theory of recovery adequately.  It is also important for the parties to be precise with their language; being careful not to confuse statutes that prohibit recovery against a distributor for *any* product liability claim with statutes that prohibit recovery against a distributor for *specific types* of product liability claims.

[10] The Court has issued several orders denying remand on the basis of fraudulent joinder in  similarly situated member actions (i.e., member actions involving

## C.    Procedural Misjoinder

### 1.    Overview

The Bayer Defendants present an alternative argument which would allow the Court to sever improperly joined claims before assessing diversity jurisdiction. The argument is based on the doctrine of procedural misjoinder (also referred to as fraudulent misjoinder). As discussed above, traditional notions of fraudulent joinder focus on whether the plaintiff can recover against the diversity destroying defendant. Procedural misjoinder, on the other hand, focuses on whether the jurisdictional spoiler has been properly joined under state or federal joinder rules.[11] The doctrine provides that federal courts may sever an improperly joined party *before* assessing the propriety of removal. If the

McKesson that were originally brought in a California state court, removed to a California district court, and transferred to this MDL. The plaintiffs in these cases completely failed to plead that McKesson supplied the pills that caused the alleged injuries. The Court concluded that absent such an allegation, the plaintiffs' complaints failed to allege causation. In these cases, *none* of the Plaintiffs' claims had a reasonable possibility of success against McKesson, the only nondiverse defendant. Therefore, unlike the above captioned cases, the Court could entirely disregard McKesson's citizenship in its jurisdictional analysis. *See e.g., In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.,, 2010 WL 3937414 (S.D. Ill. Oct. 4, 2010) (Herndon, CJ.); In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig., 2010 WL 1963202 (S.D. Ill. May 14, 2010) (Herndon, CJ.); In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig., 2010 WL 2402926 (S.D. Ill. June 15, 2010) (Herndon, CJ.).*

[11]  In those courts that have adopted the procedural misjoinder doctrine, there is disagreement as to whether state or federal joinder rules should be applied. *See Rutherford v. Merck Co., 428 F. Supp. 2d 842, 855 n.2 (S.D. Ill. April 21, 2006) (Murphy, CJ.).*

remaining properly joined parties are completely diverse, the court retains that portion of the case and remands the rest of the case to state court.

## 2. Origin

Procedural misjoinder was first recognized by the Eleventh Circuit in ***Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir. 2000).** ***Tapscott*** involved two class actions: One group of plaintiffs brought suit against a group of in-state (and therefore nondiverse) defendants in state court for fraud in relation to the sale of *automobile* service contracts. ***Tapscott,* 77 F.3d at 1355, 1359-1360**. A second group of plaintiffs, in the same action, brought suit against a separate group of diverse defendants for fraud relating to the sale of service contracts in connection with the sale of *retail products*. ***Id.* at 1355.** The district court severed the claims against the diverse retail defendants and retained jurisdiction over that portion of the case (the claims against the nondiverse automobile defendants were remanded). ***Id.* at 1355-1356, 1360.** On appeal, the Eleventh Circuit held that although the automobile plaintiffs may have asserted colorable claims against the nondiverse defendants, those claims had "no real connection" with the claims the retail plaintiffs were asserting against the diverse defendants. ***Id.* at 1360.** The appellate court affirmed the district court's decision to sever and deny remand as to the claims of the diverse retail defendants, concluding that the parties were

13

misjoined under Rule 20 of the Federal Rules of Civil Procedure and that the misjoinder was "so egregious" it rose to the level of fraudulent joinder. *Id.*

### 3. Recognition of Procedural Misjoinder

#### a. Circuit Courts

The Seventh Circuit Court of Appeals has not had occasion to accept or reject the procedural misjoinder doctrine. The Fifth Circuit Court of Appeals has recognized procedural misjoinder as a basis for removal jurisdiction. ***See Crocket v. R.J. Reynolds Tobacco Co., 436 F.3d 529, 533 (5th Cir. 2006), cert. denied, 548 U.S. 907 (2006) (holding that if the claims asserted against the nondiverse defendants differ enough from the claims against the diverse defendants such that they do not meet the joinder requirements of Federal Rule of Civil Procedure 20(a) or its state counterpart, the parties have been misjoined and removal is proper).*** The Eighth, Ninth, and Tenth Circuit Courts of Appeal have discussed the doctrine of procedural misjoinder but have not expressly accepted or rejected it. ***See California Dump Truck Owners Ass'n v. Cummins Engine Co., Inc., 24 Fed. Appx. 727, 729 (9th Cir. 2001); In re Prempro Products Liability Litigation, 591 F.3d 613 (8th Cir. 2010); Lafalier v. State Farm Fire and Cas. Co., 391 Fed. Appx. 732 (10th Cir. 2010).*** The remaining Circuit Courts have not had occasion to address the doctrine.

### b.    District Courts

The reaction from district courts considering the doctrine of procedural misjoinder has been mixed.  District courts that have recognized the doctrine generally find that it is an appropriate expansion of traditional fraudulent joinder principles and employ the doctrine as a means of protecting defendants' statutory right to removal.  ***See e.g., Green v. Wyeth,* 344 F. Supp. 2d 674, 683-685 (D. Nev. Oct. 29, 2004) (Hicks, J.); *Reed v. American Medical Sec. Group, Inc.,* 324 F. Supp. 2d 798, 805 (S.D. Miss. March 4, 2004) (Lee, J.); *In re Diet Drugs,* 1999 WL 554584, at \*3 (E.D. Pa. July 16, 1999) (unreported) (Bechtle, J.).**

According to Professors Laura J. Hines and Steven S. Gensler, the authors of **<u>Driving Misjoinder: The Improper Party Problem in Removal Jurisdiction</u>,**  "[t]he doctrine has proved most attractive to courts grappling with complex product liability suits, where plaintiffs routinely join nondiverse physicians or retailers as defendants to defeat diversity jurisdiction, or join the claims of plaintiffs from multiple states with nothing in common except a common (or similarly situated) defendant.  **57 Ala. L. Rev. 779, 808-810 (2006).  *See e.g., Green v. Wyeth,* 344 F. Supp. 2d 674 (D. Nev. Oct. 29, 2004) (Hicks J.); *In re Diet Drugs Prods. Liab. Litig*., 294 F. Supp. 2d 667 (E.D. Pa. July 30, 2003) (Bartle, J.).**

On the other hand, a number of district courts have expressly refused to recognize procedural misjoinder as a basis for removal jurisdiction. Generally, the position taken by courts that have rejected the doctrine is that procedural misjoinder is an improper expansion of diversity jurisdiction by the federal courts which unnecessarily complicates the removal analysis and is confusing in its application. **See Sabo v. Dennis Techs., LLC, 2007 WL 1958591 (S.D. Ill. July 2, 2007) (Herndon, J.) (unreported) (rejecting the doctrine); *Rutherford v. Merck Co.*, 428 F. Supp. 2d 842, 851 (S.D. Ill. April 21, 2006) (Murphy, CJ.) ("In the Court's view, the *Tapscott* doctrine is an improper expansion of the scope of federal diversity jurisdiction by the federal courts.");** *Bird v. Carteret Mortgage Group*, **2007 WL 43551, at \*5 (S.D. Ohio Jan. 5, 2007) (Kemp, J.) (unreported) (agreeing with other district court decisions rejecting the doctrine, including** *Rutherford***, and noting that the doctrine is inconsistent with the narrow construction that must be applied to removal);** *Asher v. Minn. Mining & Mfg. Co.,* **2005 WL 1593941, at \*5 (E.D. Ky. June 30, 2005) (Caldwell, J.) (unreported) (citation omtted) ("[C]ourts have recognized that the governing legal standards regarding the fraudulent misjoinder doctrine are far from clear.");** *Osborn v. Metro. Life Ins. Co.*, **341 F. Supp. 2d 1123, 1128 (E.D. Cal. Oct. 20, 2004) (Karlton, J.) (declining to adopt the doctrine and noting "the last thing the federal courts need is more procedural complexity").** Many of these courts also opine that the better approach is for parties to seek severance in state court prior to removal.

*Osborn* , 341 F. Supp. 2d at 1127 (the better approach is to address misjoinder in state court prior to removal); *Bird v. Carteret Mortgage Group*, 2007 WL 43551, at *5 (same).  See also 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3723 at 658 (discussing application of the doctrine and noting that the better approach is to address severance in state court).

  c.  *Sabo v. Dennis Technologies*

  The undersigned Judge considered and rejected the procedural misjoinder doctrine in *Sabo v. Dennis Techs., LLC,* 2007 WL 1958591 (S.D. Ill. July 2, 2007) (Herndon, J.) (unreported).  In *Sabo*, the plaintiff, an Illinois citizen, brought state law claims against his employer, also an Illinois citizen in Illinois State Court.  *Id.* at *1-*2.  The employer impleaded as third-party defendants Sprint Nextel Corporation and Nextel Retail Stores, LLC (the "Sprint defendants"), citizens of Kansas, Delaware, and Virginia.  *Id.* at *1, *3.  The Sprint defendants removed the action to the Southern District of Illinois on the basis of diversity, alleging (among other things) that the claims against the employer had been improperly joined with the latter's third-party claims against the Sprint defendants.  *Id.* at *1, 3.

  In assessing the Sprint defendants' argument for removal based on the doctrine of procedural misjoinder, the Court reviewed the procedural misjoinder decision authored by Judge Murphy in *Rutherford v. Merck Co.*, 428

**F. Supp. 2d 842 (S.D. Ill. April 21, 2006).**  In *Rutherford*, Judge Murphy concluded that the procedural misjoinder doctrine is an improper judicial expansion of diversity jurisdiction.  Specifically, the "***Rutherford*** decision noted that the jurisprudence of the Supreme Court of the United States has never even hinted at the recognition of misjoinder of legally-viable, non-fraudulent claims under state law as a species of fraudulent joinder; the longstanding principle in the federal courts has been that questions of joinder, particularly under state rules of civil procedure, do not implicate federal subject matter jurisdiction." *Sabo,* **2007 WL at \*6.**

In addition, ***Rutherford*** noted that courts applying the procedural misjoinder doctrine have struggled with its scope and application.  **Rutherford, 428 F. Supp. 2d at 852-854.**  Finally, the ***Rutherford*** decision examined the Seventh Circuit's preference for jurisdictional rules that are simple and easy to apply and concluded that "any jurisdictional principle based upon highly discretionary, fact-specific determinations about proper joinder of parties and claims in a given case is unlikely to meet this standard."  *Sabo,* **2007 WL at \*6.**

Ultimately, the undersigned Judge agreed with the reasoning of ***Rutherford***.  ***Id.* at \*7-\*8.**  In so holding the undersigned Judge explained:

> [F]ederal courts possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. Moreover, the fact that federal courts are courts of limited jurisdiction imposes special risks on litigants, especially litigants who choose to proceed in federal court where the grounds for federal subject matter jurisdiction are not clear, namely, that months and

years of litigation may be in vain as a result of a jurisdictional error. For this reason, where jurisdictional issues are concerned, courts and litigants are best served by a bright-line rule.

***Id.* at *8 (citations omitted).**

### 4.     Procedural misjoinder in the above captioned cases

The Plaintiffs in the above captioned cases have no connection to each other aside from the fact that they ingested one of the subject drugs. The Plaintiffs reside in different states, were prescribed different drugs (Yaz, Yasmin, and/or Ocella) by different doctors at different times, have different medical histories, and utilized different pharmacies. Considering these differences, the Court concludes that the Plaintiffs' claims do not arise out of the same transaction, occurrence, or series of transactions or occurrences and are therefore improperly joined under either California or federal pleading rules. ***See Cal. Civ. Proc. § 378 (a); Fed. R. Civ. Proc. 20. *See also e.g., Adams v. I-Flow Corp.,* 2010 WL 1339948 (C.D. Cal. March 30, 2010) (Real, J.) (unreported) (sole common allegation of pain pump or anesthetic use in action involving 141 plaintiffs from different states who were operated on in different hospitals by different doctors did not constitute the same transaction or occurrence under either California or federal joinder rule).**

The Court suspects that the structuring of the above captioned cases is deliberate and employed for the purpose of avoiding removal to federal court. All but one of the joined Plaintiffs in *Bleecher* and two of the joined Plaintiffs in

19

*Brambilla* assert claims against completely diverse defendants. Clearly, the eight non-California Plaintiffs in *Bleecher* and the twelve non-California Plaintiffs in *Brambilla* could not have brought suit against *any* of the Defendants and avoided removal to federal court had they not teamed up with the California Plaintiffs.

This type of tactical gamesmanship is troubling to the Court. The Court agrees with other jurisdictions who have concluded that such structural maneuvering wrongfully blocks defendants' access to federal courts. ***See e.g., Reed v. American Medical Sec. Group, Inc., 324 F. Supp. 2d 798, 805 (S.D. Miss. 2004) (Lee, j.) (assessing removal in a suit involving a "collection of unrelated plaintiffs suing over unconnected events" and concluding that "diverse defendants ought not be deprived of their right to a federal forum by such a contrivance as this"); Green v. Wyeth, 344 F. Supp. 2d 674, 685 (D. Nev. 2004) (Hicks J.) (concluding that the improper joinder of plaintiffs "frustrated" the defendants' statutory right to removal). See also Alabama Great Southern Railway Co. v. Thompson, 200 U.S. 206, 218, 26 S.Ct. 161, 50 L.Ed. 441 (1906) ("Federal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal courts of the protection of their rights in those tribunals"); Federated Dep't Stores v. Moitie, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (noting that when assessing federal question jurisdiction courts "will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum"). See also Jeff Fisher, Comment, <u>Everybody Plays the</u>***

**Fool, Sometimes: There's No Exception to the Rule: Procedural Misjoinder is Not an Exception to the Voluntary-Involuntary Rule**, 60 Baylor L. Rev. 993 (2008) (arguing that the procedural misjoinder doctrine is necessary to "fill a gap" and without it plaintiffs can "keep cases locked in state court when the only properly joined parties are diverse.").

The Court is also concerned that this type of procedural manipulation may be used by plaintiffs to usurp removal jurisdiction under the Class Action Fairness Act. *See* **Laura J. Hines & Steven S. Gensler, Driving Misjoinder: The Improper Party Problem in Removal Jurisdiction**, 57 Ala. L.Rev. 779, 808-810 (2006) (discussing minimal diversity under the Class Action Fairness Act and the related negative implications of not recognizing procedural misjoinder as a basis for removal jurisdiction).

Unfortunately, at this time, the Court does not have the authority to remedy the misjoinder in the above captioned cases. Although the type of tactical gamesmanship present in the above captioned cases was not present in *Sabo,* the Court's analysis with regard to the propriety of adopting the procedural misjoinder doctrine is applicable. As the undersigned Judge explained in *Sabo*:

> [T]he decision to enlarge the scope of federal diversity jurisdiction on removal through the adoption of the fraudulent misjoinder doctrine is one for Congress to make. The Court concludes further that the doctrine is neither simple nor easy to apply. For this reason, it is unlikely to promote consistent results or conservation of the resources of courts and parties. Accordingly, the undersigned District Judge aligns himself with numerous previous decisions by other

judges of the Court in declining to recognize the fraudulent misjoinder doctrine.

*Sabo,* **2007 WL at \*9 (citations omitted).** Moreover, the Court notes that Plaintiffs' structural maneuvering and desire to avoid removal to federal court are not necessarily improper under the jurisprudence of this Circuit. As the Seven Circuit Court of Appeals explained in ***Garbie v. DaimlerChrysler Corp.,*** **211 F.3d 407 (7th Cir. 2000),** even if plaintiffs add a non-diverse defendant to prevent removal, "that is their privilege; plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum. Neither § 1332 nor any case of which we are aware provides that defendants may discard plaintiffs in order to make controversies removable. It is enough that the clams be real, that the parties not be nominal." ***Id.* at 410.**

Therefore, in accord with the rationale above, the Court declines to adopt the procedural misjoinder doctrine.

## CONCLUSION

There is no dispute that the California Plaintiffs have asserted viable claims against McKesson. Thus, even assuming the Disputed Plaintiffs have fraudulently joined McKesson, complete diversity does not exist. Although the Court has significant concerns about permitting plaintiffs to block defendants' access to federal courts by joining the claims of multiple plaintiffs from multiple states with a completely unrelated "spoiler" plaintiff, the Court declines to expand

removal jurisdiction by adopting the doctrine of procedural misjoinder. Doing so would be an improper judicial expansion of federal diversity jurisdiction. Accordingly, the Court finds that the above captioned cases lack complete diversity and are not removable.

The Court therefore **ORDERS** as follows:

### _Ryan Bleecher, et al., v. Bayer Corp., et al._ Case No. 3:10-cv-20382

- Plaintiffs' motion to remand to state court is **GRANTED**.

- The Clerk is instructed to **REMAND** this case back to the Superior Court of the State of California, County of Los Angeles, pursuant to 28 U.S.C. § 1447(c).

- The Court will not award attorneys' fees and costs associated with Plaintiff's Motion to Remand.

### _Josefina Brambila, et al., v. Bayer Corp., et al._ Case No. 3:10-cv-20248

- Plaintiffs' motion to remand to state court is **GRANTED**.

- The Clerk is instructed to **REMAND** this case back to the Superior Court of the State of California, County of Los Angeles, pursuant to 28 U.S.C. § 1447(c).

- The Court will not award attorneys' fees and costs associated with Plaintiff's Motion to Remand.

**FURTHER, parties shall advise the court by 5:00 pm March 21, 2011 if they intend to withdraw any motions to remand or responses in**

opposition thereof, in light of this order and, if so, identify which cases such action is being taken.

**SO ORDERED:**

David R. Herndon
2011.03.11 15:57:19 -06'00'

**Chief Judge**
**United States District Court**                    DATE: **March 11, 2011**